# EXHIBIT A

mwe.com

Jennifer B. Routh
Attorney at Law
jrouth@mwe.com
+1 202 756 8165

June 16, 2022

VIA EMAIL

William G. Powers, Esq.
The Watergate
600 New Hampshire Ave NW, 10th Floor
Washington, DC 20037

      Re:     Demand for Return of Property

Dear Will:

      As discussed yesterday, we have been retained to represent CVS Health Corporation and its subsidiaries (collectively "CVS") named in the recently unsealed *qui tam* lawsuit *U.S. ex rel. Ellsworth Associates, LLP v. CVS Health Corp., et al.*, Case No. 19-cv-02553 (E.D. Pa.). As the exhibits to the complaint in the lawsuit make clear, Alexandra Miller improperly and without authorization retained and used CVS's property—company documents—after her departure from the company in May 2019. On behalf of CVS, I am writing to demand the immediate return all of CVS's documents, as well as any other company property still in her possession.

      Although we currently do not know the full extent of company property in Ms. Miller's possession, the exhibits to the Second Amended False Claims Act Complaint ("Complaint") demonstrate that she has a broad set of CVS's documents covering a range of subject matters and that those documents contain the protected health information of beneficiaries of Medicare prescription drug benefit plans. Dkt. No. 18 at p. 328.

      In addition, the documents contain CVS's confidential and proprietary information. By way of example only, the sixth exhibit to the Complaint is a CVS strategy slide deck presentation marked "confidential and proprietary" that, by its terms, is intended for "Internal Use Only." Dkt. No. 18 at p. 295.

      By taking CVS's documents, Ms. Miller breached her duties to the company, converted its property, and violated the CVS Health Colleague Handbook and the Restrictive Covenant Agreement you signed in exchange for company stock. *See, e.g.*, Ex. A (excerpts from CVS Health Colleague Handbook), Ex. B (2017 Restrictive Covenant Agreement). In the Restrictive Covenant Agreement, for example, Ms. Miller expressly agreed that:

- "I will not at any time, whether during or after the termination of my employment, disclose to any person or entity any of the Corporation's Confidential Information,

McDermott Will & Emery

500 North Capitol Street, NW   Washington DC 20001-1531   Tel +1 202 756 8000   Fax +1 202 756 8087

*US practice conducted through McDermott Will & Emery LLP.*

June 16, 2022
Page 2

> except as may be appropriately required in the ordinary course of performing my duties as an employee of the Corporation." Ex. B § 4(a).[1]

- "During my employment, I shall not make, use or permit to be used, any materials of any nature relating to any matter within the scope of the business of the Corporation or concerning any of its dealings or affairs other than for the benefit of the Corporation. I shall not, after the termination of my employment, use or permit to be used any such materials and shall return same in accordance with Section 5 below." *Id.* § 4(b).

- "On or before my final date of employment with the Corporation, I shall return to the Corporation all property of the Corporation in my possession, custody or control, including but not limited to the originals and copies of any information provided to or acquired by me in connection with the performance of my duties for the Corporation, such as files, correspondence, communications, memoranda, e-mails, slides, records, and all other documents, no matter how produced or reproduced, all computer equipment, communication devices (including but not limited to any mobile phone or other portable digital assistant or device), computer programs and/or files, and all office keys and access cards. I agree that all the items described in this Section are the sole property of the Corporation." § 5.[2]

By violating the Restrictive Covenant Agreement, she caused CVS irreparable damage. *Id.* § 9. And her violation entitles CVS to various remedies, including a return of the stock awarded to her as a condition to the agreement, injunctive relief, and restitution. Ms. Miller is also not shielded from the consequences of her conduct simply by virtue of her being an alleged whistleblower. *See, e.g., U.S. ex rel. Cafasso v. General Dynamics,* 637 F.3d 1047, 1062 (9th Cir. 2011) (declining to protect a whistleblower from violating her confidentiality agreement on a public policy exception); *see also Walsh v. Amerisource Bergen Corp.*, No. 11-7584, 2014 WL 2738215, *7 (E.D. Pa. Jun. 17, 2014) (agreeing with the reasoning in *Cafasso*).

Her continued possession of CVS's documents also exposes her to liability for conversion of company property. *See, e.g., Bradley v. Martin*, No. 1 CA-CV 07-0025, 2007 WL 5463560, at *4 (Ariz. Ct. App. Nov. 13, 2007) (listing legal elements and reinstating punitive damages award for individual's conversion of property). And depending on the full extent of documents she has taken, she may also have exposure for other torts, such as theft of CVS's trade secrets. CVS hereby demands that Ms. Miller return all of its property within seven days

---

[1] The exhibits to the Second Amended False Claims Act Complaint cited above (plus several others not specifically cited) meet the agreement's definition of "Confidential Information." *See id.* § 4(a).

[2] Similarly, the CVS Health Colleague Handbook required that you, among other things, "[r]eturn all proprietary information in your possession upon leaving CVS Health."



June 16, 2022
Page 3

of the date of this letter.  She should send the documents and other property to my attention, along with an affidavit attesting that neither she nor any of her attorneys, representatives, or agents, etc. have retained any copies of the documents.

    CVS is continuing to investigate the taking of its documents and reserves all rights associated with the improper taking, retaining, and using of CVS's documents, including its attorney-client communications and work product information.

Sincerely,

Jennifer B. Routh

Cc:    W. Scott Simmer, Esq.
       Brian R. Stimson, Esq.
       Lesli Esposito, Esq.



# EXHIBIT A



# CVS Health Colleague Handbook

©2017 CVS Health and/or one of its affiliates: Confidential & Proprietary

## A. Confidentiality

Your ability to keep and respect confidences is important in all aspects of CVS Health business and is particularly critical in CVS Health pharmacy matters. Our customers must be able to trust and have complete confidence that all CVS Health colleagues will protect and maintain as absolutely confidential the very personal customer/patient information that they may have access to, or otherwise become aware of, concerning our pharmacy customers. Every colleague shall, at all times, maintain and protect the confidentiality of customer/patient information. By way of example only, confidential customer/patient information includes information relating to prescriptions, diagnosis, medical treatment, therapy, family data and any other personal information regarding a customer (including credit standing/history). Except as is necessary for the proper completion of prescriptions and care of a customer/ patient, such information shall not be discussed or otherwise shared with other CVS Health colleagues or with any person outside of the CVS Health organization. Any third-party requests or inquiries for customer/patient information must be directed to the Privacy Office. Inquiries of a non-medical-related nature should be referred to your supervisor. In order to protect against the disclosure of confidential information, including but not limited to customer medical information, it is prohibited for any colleague to record a meeting or conversation regarding company matters during working time without the prior consent of all parties to the conversation.

In general, as a colleague of CVS Health, you may be exposed from time to time to confidential and propriety information related to our customers, colleagues, technological innovations, business strategies and systems. By way of example, this includes trade secrets, customer lists, acquisition and divestiture information, customer/patient information, colleague information, information protected by state or federal law, including HIPAA protected information, computer systems data and information, financial data and information, terms and conditions of certain CVS agreements, and sales information. This includes information that might be of use to competitors or harmful to the company or those we serve if disclosed to others. It is vitally important that you understand that all confidential and proprietary information you may gain access to in the course of your job duties is the property of CVS Health and/or of the individual customer/patient or colleague.

In all cases you must:

- Use proprietary information only for job-related purposes, never for personal gain or to the detriment of CVS Health;

- Share proprietary information with co-workers only on a "need to know" basis, and not disclose it to persons outside the company, including business associates or those we serve, except under the terms of a confidentiality agreement approved by the Legal Department;

- Return all proprietary information in your possession upon leaving CVS Health;

- If you worked for a competitor before joining CVS Health, do not share proprietary and confidential business information of the former employer; and

- If you are asked to produce a CVS Health policy or procedure, ensure you are in compliance with our Distribution of CVS Health Policies and Procedures to PBM Clients and Other Third Parties Policy, available on the Policy and Procedure Portal.

Any concerns regarding this policy should be referred to the Privacy Office.

## B. Privacy and Security of Customer Information

Our role in the healthcare industry requires us to collect and maintain the personal health information of those we serve. This data, also called "Protected Health Information" or PHI, is protected under federal and state privacy and security laws. These laws require that PHI, such as names, addresses, dates of birth, phone numbers and social security numbers that are combined with medical information such as medical diagnoses, prescription histories and physician notations, be handled in a confidential manner.

"Personally Identifiable Information" (PII) must also be protected. PII is any piece of information which can potentially be used to uniquely identify, contact, or locate a single person. It includes the demographic information associated with PHI, as well as other unique identifiers such as credit card data, email addresses, driver's licenses, finger prints, online contact information, religious affiliations, financial information, certain photographic images or handwriting.

It is critical that those we serve – including colleagues who also may be utilizing our retail or pharmacy services – are able to count on us to protect their personal and health information. Remember, the people we serve trust CVS Health to use their PHI and PII only for purposes of providing our services to them.

Protecting PHI, PII and the confidentiality of those we serve are conditions of employment with CVS Health.

You should:

- In all cases, use and disclose the minimum necessary PHI or PII to perform the job;
- Disclose PHI or PII to any third party only with appropriate written authorization from the individual, unless the law authorizes or requires the disclosure;
- Use health information with all identifiers removed whenever possible;
- Dispose of unneeded copies of documents containing PHI or PII in the available shred bins and bags;
- In your work space, never leave PHI or PII lying on desks, active on computers, in fax machines or in any other generally accessible area;
- Take special care to secure PHI or PII when transmitting or transporting it outside CVS Health; and
- Make sure to encrypt any PHI or PII on portable devices (such as cartridges, USB devices, disks, laptops, mobile devices) or transmitted through the Internet.

# EXHIBIT B



**MEMO**

TO:        CVS Health Equity Award Recipients

DATE:     April 18, 2017

**As a condition of accepting your 2017 Annual Restricted Stock Unit (RSU) award, <u>you are required to review and electronically sign a restrictive covenant agreement (RCA) by June 1, 2017.</u>**

You will not be able to accept your RSU award in E*TRADE until you have signed your RCA. *In addition, if you have not electronically signed by 11:59 pm on June 1, 2017, the company may take action as it deems appropriate, up to and including the termination of your employment.*

This action needs to be made in Adobe Sign. If you have questions, please contact your Human Resources Business Partner.

## CVS Pharmacy, Inc.
## Restrictive Covenant Agreement

I, _Alexandra E. Miller_____, enter into this Restrictive Covenant Agreement ("Agreement") with CVS Pharmacy, Inc., on its own behalf and on behalf of its subsidiaries and affiliates ("CVS" or "Corporation"), which is effective as of the date I sign the Agreement ("Effective Date"). In consideration of the mutual promises in this Agreement, the parties agree as follows:

1. **Consideration for Agreement**. In connection with my duties and responsibilities at CVS, the Corporation will provide me with the Corporation's Confidential Information ("Confidential Information") and/or access to the Corporation's customers and clients and the opportunity to develop and maintain relationships and goodwill with them. In addition, the Corporation has awarded me restricted stock units contingent on the execution of this Agreement and compliance with its terms.

2. **Non-Competition**. During my employment by the Corporation and during the Non-Competition Period following the termination of my employment for any reason, I will not, directly or indirectly, engage in Competition or provide Consulting or Audit Services within the Restricted Area.

   a. **Competition**. Engaging in "Competition" means providing services to a Competitor of the Corporation (whether as an employee, independent contractor, consultant, principal, agent, partner, officer, director, investor, or shareholder, except as a shareholder of less than one percent of a publicly traded company) that: (i) are the same or similar in function or purpose to the services I provided to the Corporation at any time during the last two years of my employment by the Corporation; or (ii) will likely result in the disclosure of Confidential Information to a Competitor or the use of Confidential Information on behalf of a Competitor. If a representative of the Corporation, during my employment or the Non-Competition Period, requests that I identify the company or business to which I will be or am providing services, or with which I will be or am employed, and requests that I provide information about the services that I am or will be providing to such entity, I shall provide the Corporation with a written statement detailing the identity of the entity and the nature of the services that I am or will be providing to such entity with sufficient detail to allow the Corporation to independently assess whether I am or will be in violation of this Agreement. Such statement shall be delivered to the Corporation's Chief Human Resources Officer or her authorized delegate via personal delivery or overnight delivery within five calendar days of my receipt of such request.

   b. **Competitor**. A "Competitor" for purposes of this Agreement shall mean any person, corporation or other entity that competes with one or more of the business offerings of the Corporation. As of the Effective Date, the Corporation's business offerings include: (i) pharmacy benefits management ("PBM"), including: (a) the administration of pharmacy benefits for businesses, government agencies and health plans; (b) mail order pharmacy; (c) specialty pharmacy; (d) the procurement of prescription drugs at a negotiated rate for dispensing; and (e) Medicare Part D services; (ii) retail, which includes the sale of prescription drugs, over-the-counter medications, beauty products and cosmetics, digital and traditional photo finishing services, digital and other online offerings, seasonal and other general merchandise, greeting cards, convenience foods and other product lines and services which are sold by the Corporation's retail division ("Retail"); (iii) retail health clinics ("MinuteClinic"); (iv) the provision of pharmaceutical products and ancillary services, including specialty pharmaceutical products and support services and the provision of related pharmacy consulting, data management services and medical supplies to long-term care facilities, other healthcare service providers and recipients of services from such facilities ("Long-Term Care"); (v) the provision of prescription infusion drugs and related services ("Infusion"); and (vi) any other business in which Corporation is engaged or imminently will be engaged.



For the purpose of assessing whether I am engaging in "Competition" under section 2 (a) (i) above, a person, corporation or other entity shall not be considered a Retail Competitor if such entity derives annual gross revenues from its business in an amount which is less than 2% of the Corporation's gross revenues from Retail, during its most recently completed fiscal year. For avoidance of doubt, this exclusion does not apply to a determination of whether I am engaging in "Competition" as set forth in section 2 (a) (ii) above.

The Parties acknowledge that both the Corporation's products and services and the entities which compete with the Corporation's products and services evolve and an entity will be considered a Competitor if it provides products or services competitive with the products and services provided by the Corporation within the last two years of my employment.

I agree to this enterprise-wide definition of non-competition which may prevent me from providing services to any of the Corporation's PBM, Retail, MinuteClinic, Long-Term Care and Infusion Competitors or any combination thereof during the Non-Competition period.

  c.   **Consulting or Audit Services**. "Consulting or Audit Services" shall mean any activity which involves providing audit review or other consulting or advisory services with respect to any relationship or prospective relationship between the Corporation and any third party that is likely to result in the use or disclosure of Confidential Information.

  d.   **Non-Competition Period**. The "Non-Competition Period" shall be the period of 12 months following the termination of my employment with the Corporation for any reason.

  e.   **Restricted Area**. "Restricted Area" refers to those states within the United States in which the Corporation conducts its business, as well as the District of Columbia and Puerto Rico. To the extent I worked on international projects in Brazil or other countries where the Corporation may conduct business, the Restricted Area includes those countries and prospective countries.

3.   **Non-Solicitation**. During the Non-Solicitation Period, which shall be 12 months following the termination of my employment with the Corporation for any reason, I will not, unless a duly authorized officer of the Corporation gives me written authorization to do so:

  a.   interfere with the Corporation's relationship with its Business Partners by soliciting or communicating (regardless of who initiates the communication) with a Business Partner to: (i) induce or encourage the Business Partner to stop doing business or reduce its business with the Corporation, or (ii) buy a product or service that competes with a product or service offered by the Corporation's business. "Business Partner" means: a customer (person or entity), prospective customer (person or entity), supplier, manufacturer, broker, hospital, hospital system, long-term care facility, and/or pharmaceutical manufacturer with whom the Corporation has a business relationship and with which I had business-related contact or dealings, or about which I received Confidential Information, in the two years prior to the termination of my employment with the Corporation. A Business Partner does not include a customer, supplier, manufacturer, broker, hospital, hospital system, long-term care facility and/or pharmaceutical manufacturer which has fully and finally ceased doing any business with the Corporation independent of any conduct or communications by me or breach of this Agreement and such full cessation of business has been in effect for at least 1 year prior to my separation from employment with the Corporation. Nothing in this Paragraph 3(a) shall prevent me from working as a staff pharmacist or in another retail position wherein I would be providing or selling prescriptions or other products directly to consumers.


AEM

b. work on a Corporation account on behalf of a Business Partner or serve as the representative of a Business Partner for the Corporation.

c. interfere with the Corporation's relationship with any employee or contractor of the Corporation by: (i) soliciting or communicating with the employee or contractor to induce or encourage him or her to leave the Corporation's employ or engagement (regardless of who first initiates the communication); (ii) helping another person or entity evaluate such employee or contractor as an employment or contractor candidate; or (iii) otherwise helping any person or entity hire an employee or contractor away from the Corporation.

4. **Non-Disclosure of Confidential Information**.

a. Subject to Section 8 below, I will not at any time, whether during or after the termination of my employment, disclose to any person or entity any of the Corporation's Confidential Information, except as may be appropriately required in the ordinary course of performing my duties as an employee of the Corporation. The Corporation's Confidential Information includes but is not limited to the following non-public information: trade secrets; computer code generated or developed by the Corporation; software or programs and related documentation; strategic compilations and analysis; strategic processes; business or financial methods, practices and plans; non-public costs and prices; operating margins; marketing, merchandising and selling techniques and information; customer lists; details of customer agreements; pricing arrangements with pharmaceutical manufacturers, distributors or suppliers including but not limited to any discounts and/or rebates; pharmacy reimbursement rates; expansion strategies; real estate strategies; operating strategies; sources of supply; patient records; and confidential information of third parties which is given to the Corporation pursuant to an obligation or agreement to keep such information confidential (collectively, "Confidential Information"). I shall not use or attempt to use any Confidential Information on behalf of any person or entity other than the Corporation, or in any manner which may injure or cause loss or may be calculated to injure or cause loss, whether directly or indirectly, to the Corporation. If, at any time over the last two years of my employment at CVS, my position included access to Confidential Information, as described above, specifically related to the Corporation's procurement of prescription drugs, I understand and agree my employment with a pharmaceutical manufacturer, distributor or supplier ("Pharmaceutical Entity") would place a substantial risk of use and/or disclosure of Confidential Information with which I have been or will be entrusted during my employment with the Corporation. In light of this risk of disclosure, I acknowledge and agree that the Corporation will be entitled to immediate injunctive relief to prevent me from disclosing any such Confidential Information in the course of my employment with any such Pharmaceutical Entity, in the event I have disclosed or am at a substantial risk of disclosing, such Confidential Information in the course of my duties for such Pharmaceutical Entity. I agree that the disclosure of such Confidential Information to Corporation's PBM Competitors with which one may negotiate in the course of employment with such Pharmaceutical Entity, would cause immediate and irreparable harm to the Corporation. For employees residing in Connecticut, these restrictions on use or disclosure of Confidential Information will only apply for three (3) years after the end of my employment where information that does not qualify as a trade secret is concerned; however, the restrictions will continue to apply to trade secret information for as long as the information at issue remains qualified as a trade secret.

b. During my employment, I shall not make, use, or permit to be used, any materials of any nature relating to any matter within the scope of the business of the Corporation or concerning any of its dealings or affairs other than for the benefit of the Corporation. I shall not, after the termination of my employment, use or permit to be used any such materials and shall return same in accordance with Section 5 below.



5.  **Ownership and Return of the Corporation's Property.** On or before my final date of employment with the Corporation, I shall return to the Corporation all property of the Corporation in my possession, custody or control, including but not limited to the originals and copies of any information provided to or acquired by me in connection with the performance of my duties for the Corporation, such as files, correspondence, communications, memoranda, e-mails, slides, records, and all other documents, no matter how produced or reproduced, all computer equipment, communication devices (including but not limited to any mobile phone or other portable digital assistant or device), computer programs and/or files, and all office keys and access cards. I agree that all the items described in this Section are the sole property of the Corporation.

6.  **Rights to Inventions, Works.**

    a.  **Assignment of Inventions.** All inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether patentable or otherwise protectable under similar law, made, conceived or developed by me, whether alone or jointly with others, from the date of my initial employment by the Corporation and continuing until the end of any period during which I am employed by the Corporation, relating or pertaining in any way to my employment with or the business of the Corporation (collectively referred to as "Inventions") shall be promptly disclosed in writing to the Corporation. I hereby assign to the Corporation, or its designee, all of my rights, title and interest to such Inventions. All original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Corporation and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act and as such are the sole property of the Corporation. The decision whether to commercialize or market any Invention developed by me solely or jointly with others is within the Corporation's sole discretion and for the Corporation's sole benefit and no royalty will be due to me as a result of the Corporation's efforts to commercialize or market any such Invention.

    b.  **Inventions Retained and Licensed.** I have attached hereto as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Corporation ("Prior Inventions"), which belong to me and are not assigned to the Corporation hereunder. If no such list is attached, I represent that there are no such Prior Inventions. I will not incorporate, or permit to be incorporated, any Prior Invention owned by me or in which I have an interest into a Corporation product, process or machine without the Corporation's prior written consent. Notwithstanding the foregoing sentence, if, in the course of my employment with the Corporation, I incorporate into a Corporation product, process or machine a Prior Invention owned by me or in which I have an interest, the Corporation is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

    c.  **Patent and Copyright Registrations.** I will assist the Corporation, or its designee, at the Corporation's expense, in every proper way to secure the Corporation's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto, including, but not limited to, the disclosure to the Corporation of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Corporation shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Corporation, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. My obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after my employment ends for any reason and/or after the termination of this Agreement. If the Corporation is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any



application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Corporation as above, then I hereby irrevocably designate and appoint the Corporation and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

    d.    **Exception to Assignments**. I understand that if I am an employee in Illinois, Kansas, North Carolina, Utah or Minnesota, I should refer to Exhibit B (incorporated herein for all purposes) for important limitations on the scope of the provisions of this Agreement concerning assignment of Inventions. I will advise the Corporation promptly in writing of any inventions that I believe meet the criteria in Exhibit B and that are not otherwise disclosed on Exhibit A.

7.    **Cooperation**.

    a.    In the event I receive a subpoena, deposition notice, interview request, or other process or order to testify or produce Confidential Information or any other information or property of the Corporation, I shall promptly: (a) notify the Corporation of the item, document, or information sought by such subpoena, deposition notice, interview request, or other process or order; (b) furnish the Corporation with a copy of said subpoena, deposition notice, interview request, or other process or order; and (c) provide reasonable cooperation with respect to any procedure that the Corporation may initiate to protect Confidential Information or other interests. If the Corporation objects to the subpoena, deposition notice, interview request, process, or order, I shall cooperate to ensure that there shall be no disclosure until the court or other applicable entity has ruled upon the objection, and then only in accordance with the ruling so made. If no such objection is made despite a reasonable opportunity to do so, I shall be entitled to comply with the subpoena, deposition, notice, interview request, or other process or order provided that I have fulfilled the above obligations.

    b.    I will cooperate fully with the Corporation, its affiliates, and their legal counsel in connection with any action, proceeding, or dispute arising out of matters with which I was directly or indirectly involved while serving as an employee of the Corporation, its predecessors, subsidiaries or affiliates. This cooperation shall include, but shall not be limited to, meeting with, and providing information to, the Corporation and its legal counsel, maintaining the confidentiality of any past or future privileged communications with the Corporation's legal counsel (outside and in-house), and making myself available to testify truthfully by affidavit, in depositions, or in any other forum on behalf of the Corporation. The Corporation agrees to reimburse me for any reasonable and necessary out-of-pocket costs associated with my cooperation.

8.    **Limitation on Restrictions**. Nothing in this Agreement is intended to or shall interfere with my right to file charges or participate in a proceeding with any appropriate federal, state or local government agency, Occupational Safety and Health Administration ("OSHA"), National Labor Relations Board ("NLRB") or the Securities and Exchange Commission ("SEC"), or to exercise rights under Section 7 of the National Labor Relations Act ("NLRA"), or interfere with my right to file a charge or complaint with or participate or cooperate in an investigation or proceeding with the US Equal Employment Opportunity Commission ("EEOC") or comparable state or local agencies; such agencies have authority to carry out their statutory duties by investigating a charge, issuing a determination, filing a lawsuit, or taking any other action authorized by law. I retain the right to participate in any such action and retain the right to communicate with NLRB, SEC, EEOC, OSHA and comparable state or local agencies and such communication shall not be limited by any provision in this Agreement. Nothing in this Agreement limits my right to receive an award for information provided to a government agency such as the SEC and OSHA. In addition, nothing in this Agreement is intended to interfere with or restrain the immunity



provided under 18 U.S.C. § 1833(b) for confidential disclosures of trade secrets to government officials, or lawyers, solely for the purpose of reporting or investigating a suspected violation of law; or in a sealed filing in court or other proceeding.

9. **Injunctive Relief.** Any breach of this Agreement by me will cause irreparable damage to the Corporation and, in the event of such breach, the Corporation shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder, and without providing a bond to the extent permitted by the applicable rules of civil procedure.

10. **No Right of Continued Employment.** This Agreement does not create an obligation on the Corporation or any other person or entity to continue my employment.

11. **No Conflicting Agreements.** I represent that the performance of my job duties with the Corporation and my compliance with all of the terms of this Agreement does not and will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Corporation.

12. **Entire Agreement/No Reliance/No Modifications.** This Agreement and any compensation, benefit or equity plan or agreement referred to herein or under which equity was granted, including the CVS Health Corporation Change in Control Agreement ("CIC Agreement"), to the extent those other agreements apply to me, set forth the entire agreement between the parties hereto and fully supersede any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement. This Agreement shall not have any effect on any prior existing agreements between the Corporation and Employee that do not deal exclusively with the subject matter of this Agreement, including but not limited to any agreement made previously by Employee and the Corporation to arbitrate workplace legal disputes, and any such agreements remain in force notwithstanding the existence of this Agreement. Notwithstanding the foregoing, if I am a party to the CIC Agreement, then I understand that in the event of a Change in Control, as that term is defined in the CIC, Paragraph 2 of this Agreement shall be null and void. I agree and acknowledge that I have not relied on any representations, promises or agreements of any kind in connection with my decision to accept the terms of this Agreement, except for the representations, promises and agreements herein. Any modification to this Agreement must be made in writing and signed by me and the Corporation's Chief Human Resources Officer or her authorized representative.

13. **No Waiver.** Any waiver by the Corporation of a breach of any provision of this Agreement, or of any other similar agreement with any other current or former employee of the Corporation, shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision hereof.

14. **Severability.** The parties hereby agree that each provision herein shall be treated as a separate and independent clause, and the unenforceability of any one clause shall in no way impair the enforceability of any of the other clauses herein. Moreover, if one or more of the provisions of this Agreement are for any reason held to be excessively broad as to scope, activity, duration, subject or otherwise so as to be unenforceable at law, the parties consent to such provision or provisions being modified or limited by the appropriate judicial body (where allowed by applicable law), so as to be enforceable to the maximum extent compatible with the applicable law.

15. **Survival of Employee's Obligations.** My obligations under this Agreement shall survive the termination of my employment regardless of the manner of such termination and shall be binding upon my heirs, personal representatives, executors, administrators and legal representatives.



16. **Corporation's Right to Assign Agreement.** The Corporation has the right to assign this Agreement to its successors and assigns without the need for further agreement or consent by me, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by said successors or assigns.

17. **Non-Assignment.** I shall not assign my rights and obligations under this Agreement, in whole or in part, whether by operation of law or otherwise, without the prior written consent of the Corporation, and any such assignment contrary to the terms hereof shall be null and void and of no force or effect.

18. **Governing Law; Venue; Headings.** This Agreement shall be governed by and construed in accordance with the laws of the state of Rhode Island. I agree that any claim or dispute I may have against the Corporation must be resolved by a court located in the state of Rhode Island. The headings of the sections contained in this Agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this Agreement.

19. **Tolling.** In the event I violate one of the time-limited restrictions in this Agreement, I agree that the time period for such violated restriction shall be extended by one day for each day I have violated the restriction, up to a maximum extension equal to the length of the original period of the restricted covenant.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as a sealed instrument as of the date set forth below.

_Alexandra E. Miller_
Alexandra E. Miller (Apr 18, 2017)

0020056
Employee ID

Date: Apr 18, 2017

_Lisa Bisaccia_
Lisa Bisaccia
Chief Human Resources Officer
CVS Pharmacy, Inc.

# EXHIBIT A

## List of Prior Inventions – See Section 6



## EXHIBIT B

## Notice Regarding Invention Assignment

1. For an employee residing in **Illinois, Kansas, or North Carolina**, you are hereby advised:

   **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention for which no equipment, supplies, facility, or trade secret information of the Corporation was used and which was developed entirely on your own time, unless (a) the invention relates (i) to the business of the Corporation or (ii) to the Corporation's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by you for the Corporation. Illinois 765ILCS1060/1-3, "Employees Patent Act"; Kansas Statutes Section 44-130; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

2. For an employee residing in **Utah**, you are hereby advised:

   **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention which was created entirely on your own time, and which is not (a) conceived, developed, reduced to practice, or created by you (i) within the scope of your employment with the Corporation, (ii) on the Corporation's time, or (iii) with the aid, assistance, or use of any of the Corporation's property, equipment, facilities, supplies, resources, or patents, trade secrets, know-how, technology, confidential information, ideas, copy rights, trademarks and service marks and any and all rights, applications and registrations relating to them, (b) the results of any work, services, or duties performed by you for the Corporation, (c) related to the industry or trade of the Corporation, or (d) related to the current or demonstrably anticipated business, research, or development of the Corporation. Utah Code Sections 34-39-1 through 34-39-3, "Employee Inventions Act."

3. For an employee residing in **Minnesota**, you are hereby advised:

   **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention for which no equipment, supplies, facility, or trade secret information of the Corporation was used, and which was developed entirely on your own time, and (a) which does not relate (i) directly to the business of the Corporation, or (ii) to the Corporation's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by you for the Corporation. Minnesota Statutes 13A Section 181.78.


AEM