# EXHIBIT B

BARON B BUDD®

DALLAS | AUSTIN | BATON ROUGE | NEW ORLEANS | LOS ANGELES
SAN DIEGO | CHICO | NEW YORK | WASHINGTON, DC

tel 202.333.4562  600 New Hampshire Ave NW, 10th Floor
fax 202.337.1039  Washington, DC 20037

June 20, 2022

VIA E-MAIL

Jennifer B. Routh
McDermott Will & Emery
500 N. Capitol St. NW
Washington, DC 20001

Re:   Demand for Return of Property
      *U.S. ex rel. Ellsworth Associates, LLP v. CVS Health Corp., et al.* (2:19-cv-2553)

Dear Jennifer,

We are in receipt of your letter of June 16, 2022, in which you demanded that our client "return all of [CVS's] property within seven days." Because Ms. Miller retained only a small subset of documents from CVS necessary to pursue a *qui tam* lawsuit, her actions are protected by federal law. Ms. Miller will not return any documents to CVS.

As your colleague Brian Stimson noted during our telephone conversation on June 15, 2022, there is a strong public policy in favor of the use of company documents to prosecute *qui tam* cases, notwithstanding employment agreements to the contrary. This public policy has been nearly universally recognized by the federal judiciary, including by courts within the Third Circuit. *See, e.g.*, *U.S. ex rel. Behnke v. CVS Caremark Corp.*, No. 14-cv-824, slip op. at 9 (E.D. Pa. Apr. 23, 2019) (a relator's providing documents "to her counsel for the sole purpose of reporting a fraud on the government[] [is] an activity protected by the False Claims Act"); *U.S. ex rel. Bahnsen v. Bos. Scientific Neuromodulation Corp.*, No. CV 11-1210, 2017 WL 6403853, at *6 (D.N.J. Dec. 15, 2017) (granting summary judgment to relator where Defendant failed to demonstrate documents "were intended or used for any other purpose than to bring a FCA claim"); *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1039 (C.D. Cal. 2012) ("[T]his taking and publication was not wrongful, even in light of nondisclosure agreements …."); *U.S. ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 152 (D.D.C. 2009) ("Relator could have disclosed the documents to the government under any circumstances, without breaching the confidentiality agreement."); *X Corp. v. Doe*, 805 F. Supp. 1298, 1310 n.24 (E.D. Va. 1992) ("To the extent it prevented disclosure of evidence of a fraud on the government, that Agreement would be void as contrary to public policy."). *Cf. U.S. ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, No. CV 02-2964, 2016 WL 9185141, at *2 n.3 (E.D. Pa. Sept. 29, 2016) ("Federal courts recognize that there is a strong public policy to allow relators to use corporate documents from the defendant in the prosecution of FCA claims.").

The circumstances under which an employment agreement can supersede this public policy are extremely rare and do not apply here. *See, e.g., U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1062 (9th Cir. 2011) (finding that the public policy exception does not apply when a litigant engages in a "vast and indiscriminate appropriation of … files," "d[oes] not look at any individual documents at all" before downloading them, and takes privileged information).

The public policy of allowing whistleblowers to use company documents to prosecute a *qui tam* case is bolstered by federal law. Congress prohibited spending federal money on any contract with a company that forces its employees to sign the sort of confidentiality agreements CVS relies on here. Legislation prohibits the appropriation of funds under any contract "with an



entity that requires employees … seeking to report fraud … to sign internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or contactors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information." Consolidated and Further Continuing Appropriations Act, Pub. L. No. 113-235, § 743, 128 Stat. 2130, 2391 (2014).

Your client's claims for conversion and the alleged theft of trade secrets are meritless for two additional reasons. *First*, "the possession of copies of documents—as opposed to the documents themselves—does not amount to an interference with the owner's property sufficient to constitute conversion." *FMC Corp. v. Cap. Cities/ABC, Inc.*, 915 F.2d 300, 303 (7th Cir. 1990). *Accord Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983) ("Conversion requires not merely temporary interference with property rights, but the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor."); *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969) ("[I]t has long been recognized that not every wrongful interference with the personal property of another is a conversion."). *Second*, if Ms. Miller had disclosed any trade secrets, she would be absolutely immune from civil or criminal liability under any state or federal law. *See* 18 U.S.C. § 1833(b)(1). Any documents Ms. Miller allegedly retained would have been disclosed "in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney," or "in a complaint … filed in a lawsuit … under seal." 18 U.S.C. § 1833(b)(1)(A)-(B). Therefore, if these documents contained trade secrets, this conduct would be protected.

The potential claims you identify in your letter are baseless (as you previously acknowledged) and appear to be motivated by your client's intent to retaliate against Ms. Miller for engaging in legally protected conduct. We are exploring a claim under 31 U.S.C. § 3730(h) for unlawful retaliation.

Sincerely,

William G. Powers

CC: W. Scott Simmer, Esq.
Noah M. Rich, Esq.
Brian R. Stimson, Esq.
Lesli Esposito, Esq.