IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel*. ELLSWORTH ASSOCIATES, LLP,<br><br>    Plaintiff-Relator,<br><br>  v.<br><br>CVS HEALTH CORPORATION, *et al*.,<br><br>    Defendants. | Case No.: 2:19-cv-02553-JMY |

BRIEF IN SUPPORT OF
RELATOR'S RULE 16(b)(4) MOTION TO MODIFY
MAY 23, 2023 SCHEDULING ORDER

W. Scott Simmer (*pro hac vice*)
William G. Powers (PA Bar No. 316876)
BARON & BUDD, P.C.
The Watergate
600 New Hampshire Ave. NW,
10th Floor
Washington, DC 20037
Telephone: (202) 333-4562
Facsimile: (202) 337-1039

Daniel Alberstone (*pro hac vice*)
Evan Zucker (*pro hac vice*)
Peter Klausner (*pro hac vice*)
Elizabeth Smiley (*pro hac vice*)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Joe H. Tucker, Jr., Esquire
Scott E. Diamond, Esquire
Tucker Law Group
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609

*Counsel for Relator Ellsworth Associates, LLP*

1

**INTRODUCTION**

Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, Relator respectfully requests a six-month extension of the deadlines set forth in this Court's May 23, 2023 Scheduling Order, ECF 69. Notably, this is Relator's first request for <u>any</u> extension of time, and no trial date has yet been set by the Court. And, although Relator is sensitive to this Court's Policies and Procedures advising parties that it "is extremely reluctant to grant continuances," Relator's Motion provides the good cause required.

To be clear, since the issuance of the Court's Scheduling Order, the parties have been actively engaged in discovery. However, as detailed below, months *after* this Court issued its Scheduling Order, the Special Master granted Defendants until December 1 to complete their production of documents in response to document requests Relator served in April. At the time Relator agreed to the current case deadlines, it could not have reasonably anticipated that Defendants' production would be delayed more than six months or that multiple disputes would arise concerning Relator's requests, many of which required intervention by the Special Master.

Moreover, despite the Special Master's recommendation that Defendants produce documents on a rolling basis "as appropriate," 85% of their production was delivered to Relator within 10 days of the December 1 deadline, with 66% of the documents produced just before or shortly after midnight on December 1.

Because of the volume of Defendants' production, the need to review that production before conducting depositions, and discovery disputes concerning Defendants' production that have already arisen requiring resolution by the Special Master, there is good cause to support Relator's request for a modification of the Scheduling Order. This is especially true here since no trial date has been set by the Court, and the pretrial conference is not scheduled until January 2025.

As such, Defendants have not—and cannot—articulate any prejudice should Relator's request be granted by the Court.

## I.  BACKGROUND

For more than nine months, the parties have been actively engaged in discovery. Unfortunately, numerous discovery disputes have already arisen, mostly dealing with Relator's document requests, which has necessitated involvement of the Special Master.

The parties worked diligently leading up to the Rule 16 conference to put together a comprehensive Rule 26 report. As a result of numerous emails and meet and confers over several months, the parties were able to enter a comprehensive Protective Order (Dkt. 73) and ESI protocol (Dkt. 74) on June 2, 2023. Soon after, the parties were able to stipulate to a Special Master (Dkt. 85) on August 2, 2023, and enter a Special Master Protocol (Dkt. 93) by August 22, 2023.

For its part, Relator has done the following responding to discovery thus far:

| Date | Discovery Item |
|---|---|
| 6/2/23 | Relator served answers to Defendants' written discovery including:<br>▪ Relator's Answers and Objections to CVS Pharmacy, Inc.'s First Set Of Interrogatories<br>▪ Relator's Responses and Objections to CVS Pharmacy, Inc.'s First Set Of Requests For Production |
| 6/16/23 | Relator provided supplemental written responses to CVS Defendants' written discovery to provide the organization and labeling of Relator's production required under Rule 34(b)(2)I(i), including relator's good faith effort to identify the particular requests to which each produced document is responsive.<br><br>Relator produced approximately 6,300 pages of documents to Defendants |
| 7/17/23 | Relator produced a privilege log to Defendants |
| 8/10/23 | Relator produced an amended privilege log to Defendants |
| 9/1/23 | Relator produced Ellsworth LLP partnership agreement document |
| 10/23/23 | Relator served its Responses and Objections to CVS Pharmacy, Inc.'s Second Set of Requests for Production on Defendants (no additional documents produced because they were either under seal or had already been produced previously) |
| 11/22/23 | Relator produced a privilege log relating to Relator's partnership agreement |

3

In addition, Alexandra and Tim Miller (the two partners comprising Ellsworth LLP) sat for depositions on September 19 and November 14, 2023. And, although Defendants have indicated their intent to take a 30(b)(6) deposition of Ellsworth LLP, that deposition has not yet been noticed.

As mentioned above, Relator has been actively pursuing information and documents from the Defendants. Relator served its First Set of Requests for Production on Defendants on April 17, 2023.[1] Defendants filed their written responses and objections on May 19, 2023. Defendants began producing documents in May. However, between May 18 and September 27, Defendants produced, in the aggregate, merely 2,649 documents to Relator.

Since the beginning of discovery, the parties have been consistently working to raise, negotiate, and resolve discovery issues. The parties have exchanged countless emails and held numerous telephonic meet and confers regarding discovery issues ranging from the appropriateness of redactions to the details of collection of documents from the numerous defendant entities. For the most part, the parties have been able to resolve the issues. For example, the parties were able to agree to the addition of Caremark LLC and Caremark Part D Services via the filing of a Third Amended Complaint to ensure the correct corporate entities are parties to the case. *See* Dkt. 88.

Unsurprisingly, given the magnitude of the case, the parties were not able to agree on all issues. A total of five discovery dispute letters have been filed with the Special Master, some of which contained multiple issues. Of particular import here, a dispute arose between the parties regarding the number of custodians and the search terms to be applied to Defendants' internal files

---

[1] The requests for production were not served on the Caremark Defendants until August 8, 2023—after they were added as parties to the litigation through the filing of Relator's Third Amended Complaint. Caremark Defendants' responses to these requests were served on Relator on September 25, 2023.

for document production. Relator brought the issues before the Special Master on August 24, 2023. *See* Exhibit 1 to Relator's Brief in Support of Relator's Rule 16(B)(4) Motion to Modify May 23, 2023 Scheduling Order (hereinafter "Ex. 1"). The Special Master issued a recommendation regarding the number and identity of the custodians on September 7, 2023, *see* Ex. 2, and the search terms dispute on September 27, 2023, *see* Ex. 8, both of which were accepted by the parties. The Special Master also set a deadline for Defendants to complete production of responsive documents by December 1, with rolling productions as appropriate. Ex. 8, at 4.

Most recently, a dispute arose concerning Defendants' intent to utilize document Target Assisted Review ("TAR") to meet the December 1 production deadline. For the first time on October 23, 2023, Defendants indicated their intent to use TAR to complete their document review. Relator requested transparency into the process of programming the TAR system. Given Defendants' prior attempts to reframe Relator's case to fit their defenses (attempts which both this Court and the Special Master have recognized), Relator was concerned that the TAR protocols implemented by Defendants would screen out many documents relevant to Relator's actual claims. The Special Master issued a recommendation that TAR may be used, but indicated that if there were any issues with the TAR process as identified at or near the end of the production, Relator could re-raise the issue. Ex. 3. The Special Master's recommendation regarding the TAR process was issued on November 2, 2023. *Id.*

Until November 2, Defendants produced only 4,685 documents. On November 22, 2023, the day before Thanksgiving, Defendants produced another 9,287 documents. Just before and after midnight on December 1-2, Defendants produced an additional 31,975 documents (totaling 274,393 pages, as well as 11 million lines of data). *See* Ex. 4. Importantly, prior to the December 1 deadline, Defendants had not completed the production of documents for any of their custodians,

5

therefore making it impossible for Relator to begin taking any depositions or to consider the infirmities of Defendants' production. Ex. 5, at 1.Indeed, per the ESI Protocol, Defendants still have until January 1, 2024, to provide Relator with the privilege logs for their entire document production.

Following Defendants' production on December 1, Relator asked Defendants whether their production was now complete. Ex. 6. Defendants' counsel responded only that their "custodial email production" had been completed. *Id.* When pressed whether they had conducted searches outside of "custodial email data," in areas such as local computer files, physical documents, non-email communications, etc., Defendants' counsel equivocated, leaving Relator's counsel uncertain whether Defendants had met their discovery obligations under the parties' ESI Protocol. *Id.*

After repeatedly being pressed by Relator's counsel, Defendants' counsel finally admitted on December 7 that Defendants had not conducted searches or collections on sources they determined "were unlikely to house *significant* numbers of relevant documents." *Id.* Of course, this means that Defendants have still not produced all relevant documents.[2] Relator intends to submit this issue of Defendants' failure to collect, review, and produce relevant documents from non-email sources to the Special Master for resolution.

As it stands, it has become apparent to Relator that, given the breadth and timing of Defendants' productions and the disputes that are arising, the current case deadlines (if they are not changed) would prejudice Relator's ability to fairly prosecute this case. So, beginning in the second week of November (before Defendants had completed their document production), and while Relator and Defendants were in the process of meeting and conferring regarding deposition

---

[2] Defendants produced over 300 pages of additional documents and additional replacement data files on December 8, 2023.

scheduling, Relator requested Defendants agree to an extension of the discovery deadlines. Ex. 7, at 24-31.

More particularly, Relator asked Defendants to stipulate to a 4-month extension of the discovery cutoff dates to allow adequate time for Relator to complete its review of Defendants' document production and then conduct depositions. *Id.* at 30. Defendants rejected Relator's request, and counteroffered with merely a 30-day extension, attaching to it a number of unreasonable conditions: (a) that Relator would not seek any additional extensions for discovery, no matter the need; (b) that Relator not be allowed to conduct the deposition of Prem Shah—a key decision maker in the SSG/DNS Scheme; (c) a restriction of the number of depositions allowed of Defendants' current and former employees, without the right of Relator to seek more depositions from the Court, even if Relator could show good cause; and (d) that Defendants would not provide Relator dates for the depositions of their witnesses unless Relator agreed to these conditions. *Id.* at 21-24.

Relator responded that Defendants' proposal was unworkable because the 30-day extension was not enough time for Relator to complete discovery, particularly given the other unreasonable conditions they attached to their proposal. Ex. 9, at 3. When Relator informed Defendants it would seek a longer extension from the Court, Defendants bluntly warned Relator that the Court "won't be hearing from [Relator] on this particular issue" and, when challenged as to why the Court would not hear this scheduling issue, Defendants provided no explanation. *Id.* at 1-2.

Instead, on November 30, Defendants proposed the same terms again, but this time presented Relator with a single date of availability for each of the deponents on the list (still excluding Prem Shah) beginning on January 9, 2024. Ex. 7, at 15-16.

7

This take-it-or-leave-it approach to the deposition dates and extension of the discovery deadline is inconsistent with the parties' obligations to act in good faith, and is not acceptable to Relator, as it will force Relator to take depositions for which it does not have adequate time to prepare based on the timing of Defendants' document production, without even taking into account the various discovery disputes that remain unresolved.

Much to Relator's dismay, further attempts between November 30 and December 8 to negotiate an extension of the current case deadlines with Defendants have proved fruitless. Ex. 7, at 1-2.

## II.  LEGAL STANDARD

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." For there to be "good cause" found upon a motion to modify the schedule, the movant must demonstrate diligence. *Hill v. Harry*, No. 1:21-CV-01424, 2023 WL 6522400, at *5 (M.D. Pa. Oct. 5, 2023). If the movant cannot demonstrate diligence, then "there is no 'good cause' for modifying the scheduling order." *Id.* (citing *Bolus v. Carnicella*, No. 15-cv-01062, 2020 WL 6203056, at *3 (M.D. Pa. Oct. 22, 2020)). Prejudice to the non-moving party is not considered as part of the good cause analysis in determining if a court's scheduling order must be modified to allow for additional time. *Ballard v. Navient Corp.*, No. 3:18-CV-121, 2023 WL 3431247, at *8 (M.D. Pa. May 2, 2023), report and recommendation adopted, No. CV 3:18-121, 2023 WL 4844371 (M.D. Pa. June 29, 2023). Rather, "[a] court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advis. Comm. Notes for 1983 Amend.; *see also Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C.). "[T]he Court has inherent authority to modify pre-trial procedural deadlines to serve the best interests of justice." *Gomez v. Trustees of*

8

*Harvard Univ.*, 676 F. Supp. 13, 15 (D.D.C. 1987).

### III.  ARGUMENT

Relator seeks to modify the Court's Scheduling Order, ECF 69, to move all case deadlines by six months to allow sufficient time for the completion of discovery. Relator recognizes that moving the fact discovery deadline implicates other deadlines, such as the deadlines for disclosure of experts, motions for summary judgment, *Daubert* motions, and as such proposes an extension of all case deadlines in accordance with its proposed schedule attached as Appendix A to this Memorandum.

Because Relator has good cause to extend the schedule based on (a) its diligence in conducting and responding to discovery, (b) its inability to review the volume of documents that have been produced to Relator in sufficient time to complete depositions under the current deadline, (c) the anticipated need for additional depositions, and (d) the current and anticipated discovery disputes that have and will arise, an extension of six-months is both reasonable and warranted.

Relator has been diligent in pursuing discovery, and thus there is good cause for an extension of the discovery deadlines. As discussed at length above, both parties have been actively engaged in the discovery process, including the following: Relator has (a) served and responded to document requests; (b) completed ESI Protocol and Protective Order negotiations; (c) agreed on a Special Master and Special Master protocol; (d) raised, negotiated, and resolved numerous discovery issues, including with the assistance of the Special Master; (e) presented witnesses for deposition and responded to disputes brought to the Special Master regarding such depositions; (f) negotiated search terms and custodian issues with Defendants, and when those issues were not resolved, promptly brought those issues before the Special Master for recommendation; (g)

9

negotiated and then litigated TAR protocols with Defendants; (h) negotiated deposition dates and restrictions with Defendants; (i) actively reviewed the documents produced by Defendants as they were produced; and (j) began review of the documents produced within the last few weeks, including dedicated increased staffing to ensure prompt review of those documents.

However, despite Relator's diligence in pursuing discovery, Relator cannot reasonably meet the current case deadlines. Relator has been unable to complete any meaningful document review and deposition preparation because of the timing of Defendants' belated document production. The Special Master set a production schedule for Defendants with rolling productions with a deadline of December 1. Although Defendants had produced some documents on a rolling basis, the majority of the documents were produced by Defendants within ten days of the December 1 deadline, with 19% of the documents produced on November 22—the day before Thanksgiving—and the remaining 66% of the documents and all of the requested claims and other data produced around midnight on December 1. This means that Relator did not have access to 85% of the documents and all of the data for almost the entire discovery period that has so far elapsed.

Further, on November 22, 2023, Defendants represented to Relator that they had still not completed the production for any of the 33 custodians. Ex 5, at 1. Therefore, for the bulk of the discovery period, Relator was not given a full set of documents for any of the custodians in this case. To be certain, Relator is mindful of the fact that it has one opportunity, absent good cause, to take the deposition of each of the witnesses it seeks to depose. As such, fairness dictates that Relator be provided a reasonable opportunity to review all the custodial documents produced before it conducts depositions of Defendants' witnesses.

Further, Relator was only recently informed that Defendants had not searched for or collected custodial documents from all appropriate and reasonable sources for all their custodians. Because there is an unknown universe of documents in Defendants' possession that they have neither reviewed nor produced, there is a serious question whether the custodial productions can be considered "complete." In all fairness, Relator needs to have all the relevant documents before it can depose Defendants' current and former employees. With an unknown number of documents that were not even collected or reviewed by Defendants, Relator cannot be reasonably expected to complete all its depositions by the current fact discovery cutoff.

Moreover, Relator estimates that it will take at least until the end of January to complete its review of the 381,878 pages of documents produced by Defendants since November 22. Relator has hired a team of document reviewers that, at current staffing levels, are getting through 5,625 documents per week and plans to hire additional reviewers to expediate the process as much as possible. This does not take into account the time needed to review the 11 million lines of claims data produced by Defendants.

In addition to Relator's ongoing document review, there are, as mentioned above, various discovery issues that will need to be resolved before the completion of discovery and, for many of these issues, before at least some of the depositions can even begin. Many of these issues could not have been pursued by Relator until Defendants produced a significant number of documents, including:

- **Audit of the TAR Review Process**. The Special Master's recommendation regarding the TAR review process specifically noted that once documents were produced, Relator could review and assert a challenge to the TAR process and allow a review and sampling of the documents marked as irrelevant under the TAR process. Relator anticipates challenging the TAR process in the coming weeks based on the low production rate in comparison to the search term hit rates.

- **Production of Recordings of Customer Service Calls**. Relator requested the production of customer service call audio recordings related to claims involving

11

formulary exception requests for the drugs listed in the complaint. Through meet and confer efforts, Defendants relayed that pulling these call materials can be very burdensome and so a plan must still be put together to determine the exact call recordings to extract from the system. Such a plan could not be put together by Relator until it had the opportunity to review the materials and determine for which members the call recordings are needed. This process cannot happen until after Relator has time to review the documents and data produced.

- **Third Party Discovery**. Relator has also served requests for third party discovery on several drug companies that negotiated rebates with Defendants. As part of those meet and confer efforts, counsel for several of the drug manufacturers asserted that they do not need to be compelled to provided documents that are already in Defendants' possession. As such, any meaningful meet and confer efforts with the third-party drug makers cannot move forward until Relator has been able to review Defendants' production to assess whether there are any missing documents.

- **Data Analysis**. The data sets produced by Defendants on December 1, 2023, are voluminous. The claims data file produced contains 11 million lines of data. Reviewing, processing, and analyzing such voluminous data will take several months. The complexity of the analysis will result in a need for an extension of the expert discovery deadlines by the same amount as fact discovery.

- **Privilege Log Review**. Relator has yet to receive a single privilege log from Defendants. Because they only "completed" the production on December 1, under the ESI Protocol the deadline to produce those logs is January 1, 2024. After the disclosure of the logs for each custodian, Relator needs a reasonable amount of time to review them so it may bring any necessary challenges to the Special Master. This further delays the ability to take depositions as many of the custodians could well have a significant number of documents withheld for privilege reasons. Further, if additional documents are produced as a result of a review of the non-email custodial documents (discussed above), then additional time for the production and review of privilege logs as to those documents would also require additional time.

- **Need for Additional Depositions**. This is a complex case involving a multifaceted scheme across multiple subsidiaries concerning several different drugs. As a result, Relator already believes that there will be a need to exceed the 10-deposition limit. There are currently 33 custodians. As such, Relator believes that additional depositions are needed and will be requested. This also does not take into consideration depositions of additional non-custodial witnesses, as a cursory review of the document productions so far reveals there are additional non-custodians who have discoverable information. Therefore, Relator will need time to request additional depositions.

The current February 23, 2024, fact discovery cutoff—less than 55 business days away (which includes the upcoming holidays)—cannot reasonably be met, despite the diligence of

Relator. The timing of Defendants' production, the missing production of non-email custodial documents, and the litany of outstanding discovery issues together show good cause to support Relator's Motion to modify the current case deadlines. While Relator initially asked Defendants to stipulate to a four-month extension, it recognizes now that more time is needed due to issues that have arisen since that request. Based on the number of documents received, and the recently discovered fact that Defendants have not done a complete collection and review of the custodial documents required under the ESI Protocol, Relator believes a six-month extension of all deadlines is warranted and will avoid the necessity of Relator seeking more time from the Court.

## IV.   CONCLUSION

For the foregoing reasons, Relator respectfully requests that the Court grant its Motion and modify the Scheduling Order entered on May 23, 2023, to extend the case deadlines consistent with the proposed dates requested by Relator in Appendix A to this Motion, or as the Court deems appropriate.

| | |
|---|---|
| Dated: December 11, 2023 | /s/  William G. Powers |
| | William G. Powers (PA Bar No. 316876) |

W. Scott Simmer (*pro hac vice*)
Daniel Alberstone (*pro hac vice*)
Evan Zucker (*pro hac vice*)
Peter Klausner (*pro hac vice*)
Elizabeth Smiley (*pro hac vice*)
BARON & BUDD, P.C.
The Watergate
600 New Hampshire Ave. NW,
10th Floor
Washington, DC 20037
Telephone: (202) 333-4562
Facsimile: (202) 337-1039

*Counsel for Relator Ellsworth Associates, LLP*

**CERTIFICATE OF SERVICE**

  I certify that on December 11, 2023 this document was filed electronically, that it is available for viewing and downloading from the ECF system, and that all counsel of record will be served by the ECF system.

                */s/__William G. Powers_____*