IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ELLSWORTH ASSOCIATES, LLP,<br><br>                 Plaintiff-Relator,<br><br>   v.<br><br>CVS HEALTH CORPORATION, *et al.*,<br><br>                 Defendants. | Case No.: 2:19-cv-02553-JMY |

**RELATOR'S OBJECTIONS TO THE SPECIAL MASTER'S
REPORT AND RECOMMENDATION REGARDING DEFENDANTS' ALLEGED
DOCUMENT PRODUCTION DEFICIENCIES**

W. Scott Simmer (*pro hac vice*)
William G. Powers (PA Bar No. 316876)
BARON & BUDD, P.C.
The Watergate
600 New Hampshire Ave. NW,
10th Floor
Washington, DC 20037
Telephone: (202) 333-4562
Facsimile: (202) 337-1039

Daniel Alberstone (*pro hac vice*)
Evan Zucker (*pro hac vice*)
Peter Klausner (*pro hac vice*)
Elizabeth Smiley (*pro hac vice*)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Joe H. Tucker, Jr., Esquire
Scott E. Diamond, Esquire
TUCKER LAW GROUP, LLC
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 875-0609
jtucker@tlgattorneys.com
sdiamond@tlgattorneys.com

*Counsel for Relator Ellsworth Associates, LLP*

Relator hereby submits its Objections to the Special Master's Report and Recommendation Regarding Defendants' Alleged Document Production Deficiencies (ECF No. 112) with regard to Discovery Dispute Letter 10 ("DDL 10") and, pursuant to its inherent authority under Fed. R. Civ. P. 16 and 37, requests the Court order the Defendants engage a third party, chosen by the parties and at Defendants' expense, to conduct a forensic audit of the document production process to ensure its completeness and fairness.

## INTRODUCTION

Defendants' document production deadline was December 1, 2023. This was a date Defendants opposed extending, insisting their production was complete. We now know that the deadline ***had not been met***. Since then, Relator has repeatedly raised serious concerns about ongoing deficiencies with the production of documents. In response to Relator's Supplemental DDL 10, the Special Master has proposed only that Defendants provide a declaration outlining in the process used to collect, search, review, and produce documents from non-email sources. ECF No. 112, at 11-12. This is the same relief the Special Master recommended twice already in response to Relator's earlier DDL 6 and the Interim Recommendation to DDL 10. Because these written explanations did nothing to curb Defendants' persistent discovery lapses, there is no reason to believe a third slap on the hand will resolve the recurring issues.

Defendants, through some combination of incompetence, inadvertence or malice have forfeited any benefit of the doubt and should be ordered to engage a third party, chosen by the parties and at Defendants' expense, to perform a forensic audit to ensure Defendants have satisfactorily complied with their discovery obligations. Based on the egregious track record, neither the Relator nor the Court can rely on Defendants' promises they will comply with their discovery obligations. Indeed, following repeated discovery dispute letters and hearings before the

1

Special Master, the Defendants on May 23, 2024 recently admitted that they failed to review an additional **75,000 documents**. This is after they repeatedly "inadvertently" failed to produce documents[1] and failed to search a previous cache of **47,000 documents** – all the while, telling the Special Master, these are only one-off, isolated incidents. These are systemic issues evidencing a deeply flawed document production process.

## I.  BACKGROUND

Nearly nine months ago, the Special Master set a document production deadline of December 1, 2023. (Ex. 1, Sep. 27 Email from SM.) Yet, now over seven months after that deadline passed, Defendants continue to produce documents, and have identified the existence of other, as-yet-unproduced documents, at an increasing rate.

On January 22, 2024, after identifying numerous discrepancies, Relator served DDL 6, which was focused on seeking transparency in the production process. (Ex. 2, DDL 6.) Through meet-and-confer efforts, Relator had learned that Defendants' document collection process failed to search relevant custodial data sources other than email (for example, no computer hard drives had been searched) and instead Relator was told that most documents saved by internal personnel are on "share drives." Even though Relator requested a list of share drive locations available and searched, Defendants never produced these details.

On February 23, 2024, after identifying serious discrepancies with the technology-assisted review ("TAR") metrics reported by Defendants, Relator served DDL 8, questioning that the

---

[1] For example, without any explanation for their six-month production delay, on May 10, 2024, Defendants produced nearly 200,000 pages of additional documents, including additional documents from the CVS Actuarial share drive, documents from a Clinical Advancement share drive, documents from other unidentified non-custodial share drives, documents Defendants had flagged in their audit of their discovery vendor, and documents they were producing "in support of [purported] defenses." (Ex. 3, May 10 Routh letter; Ex. 4, McCarthy email.)

computer-aided document review process had only a 2-5% responsiveness rate, meaning that of all the documents captured by the search terms mutually agreed upon by the parties, only 2-5% were deemed relevant by Defendants and produced. (Ex. 5, DDL 8.) Even though the Special Master denied the relief requested in DDL 8, due to recent events, the results of Defendants' entire TAR process must again be called into question. It now appears that tens of thousands of documents that should have hit on document search terms had not even been searched and tens of thousands of documents that did not hit on search terms (because of a "typographical error") were returned and fed into the flawed TAR search process.[2]

On March 22, 2024, after an extensive meet-and-confer process whereby Relator had identified even more missing documents and/or significant errors in Defendants' discovery process, Relator submitted DDL 10 (Ex. 8, DDL 10.),[3] again renewing the request for transparency related to the production process. In DDL 10, Relator detailed serial, prominent failures:

*First*, DDL 10 explained that, less than five days before the Deposition of Dominic Duke, Defendants confessed that a share drive used by Duke and his Actuarial team had never been collected, searched or included in the production.[4]

---

[2] On May 29, 2024, Relator discovered and reported to Defendants that an agreed-upon custodian, Laura Wilson in its Medical Affairs department, had not had her custodial file searched at all. (Ex. 6, May 29 Smiley email) In fact, another individual also named Laura Wilson, employed in the Client Benefits division, had been searched instead. (Ex. 7, June 2 McCarthy email.) While under other circumstances this might be a forgivable error, this oversight not only further skewed the TAR review metrics, it further illustrates that Defendants' Quality Control process failed to validate that the correct custodian's file was being produced.

[3] On January 16, 2024, during the meet-and-confer process that resulted in DDL 6, Defendants notified Relator that critical Member ID fields had been "redacted in error." In the letter alerting Relator to this error, Defendants disclosed that they discovered "additional documents … which were inadvertently omitted from the production." (Ex. 9, Jan. 16 Routh email.)

[4] One day prior to their admission of this "inadvertently" missed share drive, Defendants also confessed that they had "inadvertently failed to produce" documents they had received from a subpoena served on Mr. Duke eight months earlier.

3

*Second,* DDL 10 raised the issue of numerous missing audit reports. The fact of these missing reports came about due to Defendants' deposition questioning on this topic of their own witnesses. Despite clear document requests for these documents (*see* Ex. 10, selected pages from Relator's April 17, 2023 Request for Production Nos. 13, 14, 15), Defendants only produced additional audit reports in response to DDL 10 having raised this issue with the Special Master.[5]

*Third,* yet another concern raised in DDL 10 related to missing "Work Instructions." Work Instructions are another name for policy and procedure documents within CVS. Relator was able to identify references to several key Work Instruction documents that had not been produced. While some Work Instructions were subsequently produced on May 1 only in response to Relator's identification, why these had not been produced in response to the initial discovery requests has never been explained. Moreover, Relator was able to identify a reference to "WI 013248" that appears to be yet another critical Work Instruction dictating one of the central practices at issue in this case, the handling of non-formulary exception requests for the Hepatitis C drugs Harvoni and Epclusa. Again, the fact that this Work Instruction had not been initially produced, and has still not today been produced even after multiple meet-and-confer sessions (as well as hearings with the Special Master) leads to the only conclusion that Defendants have simply not adequately searched their records in order to produce requested, relevant documents.[6]

---

[5] Notably, in Defendants' deficient response to the Special Master's order resulting from DDL 6, Defendants represented that they had collected "audit reports" from non-custodial data sources. (Ex. 11, Feb 14 Routh email). No explanation has been provided to date for why additional audit reports were only produced months later after the discovery cut-off date.

[6] In response to the Special Master's DDL 6 recommendation to provide a letter detailing their search processes and sources (Ex. 12, Feb. 4 Merenstein Order), on February 14, 2024, Defendants provided a cursory list of their searches and informed Relator's counsel that they had searched share drive locations, including those that housed "Single-Source Generic Strategy documents and implementation workbooks" and "policies and procedures responsive to Relator's requests, including compliance policies." (Ex. 11, Feb. 14 Routh email.)

4

*Fourth*, DDL 10 identified share drives that are relevant to this litigation and which had never been searched or produced. Despite the fact that these should have been a searched source for the production due back on December 1, 2023,[7] Defendants again represented they had searched all relevant share drives. (Ex. 11, Feb. 14 Routh email).  However, only on May 16, 2024 (Ex. 14, May 16 McCarthy email), did Defendants finally admit that they had previously failed to search a "Clinical Advancement Share drive" that they were only now searching. Just how many more share drives are missing from the production (and are therefore hidden from Relator) that simply have not been mentioned by a deponent yet?

Mere days after the Parties' conference with the Special Master regarding DDL 10 (wherein Defendants had insisted that the identified discovery lapses were merely one-off, minor discrepancies that are not indicative of larger discovery process failures), Defendants admitted they had failed to search 47,000 documents during their ESI review and production process. (Ex. 15, May 7 Routh letter.) Then, on May 23, 2024, after the Special Master's Recommendation was submitted, Defendants notified Relator that another 75,000 documents had been identified that would require review and production. (Ex. 16, May 23 McCarthy email.) Relator has received no satisfactory explanation for this latest gaff.[8]

---

[7] The Clinical Advancement share drive location was first identified during the February 29, 2024 deposition of Defendant representative Kristen Ferraco (Ex. 13, selected pages from Ferraco 53: 4-15; 63:1-13; 165:3-17). On May 10, 2024, Defendants produced nearly 200,000 pages of additional documents, including documents from the Clinical Advancement share drive, as well as additional documents from the CVS Actuarial share drive, documents from other unidentified non-custodial share drives, documents Defendants had flagged in their audit of their discovery vendor, and documents they were producing "in support of [purported] defenses." *See* footnote 2 *infra*.

[8] Most recently, on May 30, in response to another discovery dispute where Relator asserted Defendants improperly withheld documents pursuant to privilege claims, Defendants have withdrawn privilege designations on 145 documents, some 71% of the documents they were ordered to re-review, an alarming rate only further evidencing their document production process failures. (Ex. 17, May 30 Routh letter.)

Throughout, Defendants have repeatedly rebuffed Relator's reasonable requests for transparency in the production process, most recently, in their May 2, 2024 letter to the Special Master, couching that information as protected by privilege because they are conversations about "litigation strategy."[9] (Ex. 18, May 2 Diskant letter.)

## II.    LEGAL STANDARD

Federal Rules of Civil Procedure 16(a) through (e) set forth standards for pretrial conferences, case management, and scheduling orders. Rule 16(f), which authorizes sanctions for violations of pretrial orders issued pursuant to this Rule, states in relevant part (with emphasis added): "If a party or party's attorney *fails to obey* a scheduling or pretrial order, ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)."

Rule 37 addresses a litigant's failure to make disclosures or to cooperate in discovery and sets forth sanctions that may be imposed by a Court. Federal discovery is premised upon good faith cooperation among the attorneys and the parties. *See* Fed. R. Civ. P. 37(f). When this cooperation is lacking, "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S.Ct. 2455 (1980) (internal quotations and citation omitted). In determining the appropriate sanctions, the Court is not required to order the parties to reach a level of perfection in identifying, preserving, collecting, and producing ESI. *City of Rockford v. Mallinckrodt ARD, Inc.*, 326 F.R.D.

---

[9] Defendants' discovery obligations are not "litigation strategy"; they are obligations imposed by the Federal Rules, not subject to gamesmanship or modification in order to gain advantage. This is not a part of the process where counsel has discretion to act or not act; instead Defendants should be producing all discoverable documents irrespective of their broader litigation strategy.

6

489, 492 (N.D. Ill. 2018). Indeed, the district courts have "wide latitude in fashioning appropriate sanctions." *Johnson v. Kakvand,* 192 F.3d 656, 661 (7th Cir. 1999).

### III.  ARGUMENT

While it is unclear if the failures identified in this Objection and the supporting documents were the product of repeated mistakes, negligence, incompetence, or bad faith, under the Federal Rules of Civil Procedure, the Defendants' good faith is not a defense for a violation of their discovery obligations. *Maynard v. Nygren,* 332 F.3d 462, 467 (7th Cir. 2003) (noting that bad faith, willfulness, or fault is required only "when dismissals are used specifically as a discovery sanction"); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 866, 868 (N.D. Ill. 2021) (same). Nor can the Defendants be shielded from their discovery obligations because they relied on a vendor and that vendor committed error. In fact, as the *DR Distributors, LLC* case makes clear, counsel has a duty to supervise "those who had been delegated the discovery responsibilities." *Id.* at 942 ("Critical to this case is counsel's competence when working with an ESI vendor.... [D]efense counsel gave a very limited scope of work to the ESI vendor and then sought to blame the vendor…. That's a nonstarter.").

The Special Master relies on *Lawson v. Love's Travel Stops & Country Stores, Inc.,* No. 1:17-CV-1266, 2019 WL 5622453, at *5 (M.D. Pa. Oct. 31, 2019), for the proposition that ordering a party to engage a neutral eDiscovery vendor is disfavored. However, in *Lawson*, the Court noted that this form of relief has been granted upon a finding of "major failures to provide ESI discovery." *Id.* (citing *Seven Seas Cruises S. De R.L. v. V. Ships Leisure SAM*, No. 09-23411-CIV, 2011 WL 772855, at *7 (S.D. Fla. Feb. 19, 2011)). And, while the *Lawson* court denied that remedy, it did so noting that "in [its] view, no such showing of major ESI discovery defalcation has been made here." *Id.*

Relator submits, on the facts in this case, just such major failures to provide eDiscovery have occurred. In *Procaps S.A. v. Patheon Inc.*, 12-24356-CIV, 2014 WL 800468, at *3 (S.D. Fla. Feb. 28, 2014), the Court ordered a third-party forensic vendor as a result of discovery failures. Indeed, the court ordered Procaps to detail every computer, data source, file server, database or hard copy document that was available for search and being searched to the opposing party for a cross check and at the expense of Procaps. *Id.* at *4. Defendants here have chosen to hide behind claims of privilege, vendor error, and the deference afforded to a party producing documents to shield themselves from this kind of transparency and now they should be met with the consequences of their actions (and inactions). *Id.*

Likewise, *Tracinda* is wholly inapposite. Rather than dealing with whether to order a forensic auditor to validate a party's document production, the Third Circuit was commenting solely on whether Rule 16(f) monetary sanctions were appropriate. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 240-43 (3d Cir. 2007) ("We conclude, therefore, in light of the circumstances of this case, that the District Court did not abuse its discretion in awarding Tracinda expense sanctions under Rule 16(f)."). Relator is not seeking monetary sanctions under either Rule 16(f) or 37(f), but a much more narrowly tailored sanction to ensure that Defendants' discovery lapses end now.[10]

Moreover, the Special Master's statement that sanctions can only be imposed after a party violates a discovery order simply ignores the fact we now know that multiple Orders have in fact been violated. First and foremost, the Special Master ordered document production to be complete

---

[10] Nor does the relief Relator is seeking require that discovery "must be redone from scratch." ECF No. 112, at 8. Instead, Relator is only seeking a court order requiring a neutral third-party to validate that Defendants are in fact collecting and producing relevant documents from all sources, something they have to date been unable (or unwilling) to do.

by December 1, 2023. Clearly this deadline has not been met.[11]

Furthermore, in response to DDL 6, the Special Master had issued an Order that Defendants "identify for Relator the data sources that they searched and those that they did not search." (Ex. 12, Feb. 4 Merenstein Order.) We now know that Defendants' response was woefully out of compliance with their obligations, and that Defendants did not identify any of the later-identified share drives that they now claim were inadvertently omitted from the original production (*e.g.*, the Actuarial share drive, the Clinical Advancement share drive). In addition, in its Interim Recommendation to DDL 10, the Special Master had required certain information about Defendants' document production process be disclosed. (Ex. 19, April 3 Interim Order.) Defendants not only failed to disclose the required information, but failed to disclose the extent of the egregious conduct that has only now come to light. Thus, the remedy Relator seeks (appointment of a neutral vendor to review and oversee the production process) is well within this Court's authority given the record of extreme discovery violations. "As long as the sanction is 'just,' there are virtually no limitations on judicial creativity in fashioning a response or remedy to a violation of a discovery order." 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.51[10] at 37-120 (3d ed. 2019).

Even though the Special Master recognized there are "specific deficiencies" in the production, he concluded "they do not demonstrate a large-scale failure severely prejudicing Relator," nor had Relator identified "systemic flaws in the Defendants' process as a whole…." ECF No. 112, at 9-10. Relator respectfully disagrees. As explained above, there have been

---

[11] Defendants have argued that the scope of discovery has expanded because of the various discovery disputes brought before the Special Master. But, even by their own admission, Defendants failed to produce documents from custodians and sources that should have otherwise been produced by December 1, 2023.

numerous, repeated "specific deficiencies" to collect and produce documents critical to the case. The Special Master errs by not considering the flaws *cumulatively*. In fact, what the Special Master could not consider was the fact that Defendants *later that same day* as his decision would announce there were an additional 75,000 documents that had not been reviewed and then a few days later Defendants would confirm they had collected the wrong custodian's documents. (Ex. 7, June 2 McCarthy email.) When flaws like using incorrect search terms, not searching key share drives, and collecting from the wrong custodians happen again and again, it becomes clear that Defendants' document collection has systemic flaws demonstrating a critical lack of quality control that permeates the entire process.

Given the extent of the systemic flaws in the production, merely demanding yet another declaration from the Defendants about their production process falls well short of addressing the underlying issues that continue to plague the discovery process in this case. Enough is enough; the time for half measures has long passed. There are significant reasons to doubt the adequacy of a self-audit by Defendants of their own failed collection and production process. On this record, Defendants' further unsupervised review of the discovery process will simply not assure that their discovery obligations have been met.

## IV. CONCLUSION

Relator respectfully requests that the Court order Defendants to engage (at their own cost) an unbiased, third-party forensic auditor chosen by the parties to evaluate their document production process to ensure that they have properly complied with their discovery obligations.

Dated: June 3, 2024                */s/ William G. Powers*
William G. Powers (PA Bar No. 316876)
W. Scott Simmer (*pro hac vice*)
BARON & BUDD, P.C.
The Watergate

10

600 New Hampshire Ave. NW,
10th Floor
Washington, DC 20037
Telephone: (202) 333-4562
Facsimile: (202) 337-1039


Daniel Alberstone (*pro hac vice*)
Evan Zucker (*pro hac vice*)
Peter Klausner (*pro hac vice*)
Elizabeth Smiley (*pro hac vice*)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698


Joe H. Tucker, Jr., Esquire
Scott E. Diamond, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 875-0609
jtucker@tlgattorneys.com
sdiamond@tlgattorneys.com


*Counsel for Relator Ellsworth Associates, LLP*

11

## CERTIFICATE OF SERVICE

I certify that on June 3, 2024 this document was filed electronically, that it is available for viewing and downloading from the ECF system, and that all counsel of record will be served by the ECF system.

*/s/ William G. Powers*
