IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ELLSWORTH ASSOCIATES, LLP,<br><br>　　　　　　　　Plaintiff-Relator,<br><br>　v.<br><br>CVS HEALTH CORPORATION, *et al.*,<br><br>　　　　　　　　Defendants. | Case No.:　2:19-cv-02553-JMY |

**DEFENDANTS' RESPONSE TO RELATOR'S OBJECTION TO THE
SPECIAL MASTER'S MAY 23, 2024 REPORT AND RECOMMENDATION
REGARDING ALLEGED DOCUMENT PRODUCTION DEFICIENCIES**

While Defendants do not agree with every aspect of the Special Discovery Master's May 23, 2024 *Special Discovery Master's Report and Recommendation Regarding Defendants' Alleged Document Production Deficiencies* (Dkt. 112, hereinafter the "Recommendation"), they recognize it as a reasonable and fair resolution of the parties' ongoing discovery disputes, none of which should warrant wasting the time and resources of this Court. As the Special Master has correctly recognized, "[t]he collection, review and production of documents in complex litigation such as this seldom is carried out without a hitch," (Dkt. 112 at 7), and while, as discussed herein, some mistakes have occurred here, Defendants – who bear substantially all of the discovery burdens in the case – have worked hard to swiftly correct them and move the case forward. By contrast Relator, who has essentially no discovery obligations of its own, has made no effort to meet and confer or to work collaboratively to address concerns as they have arisen. Instead, Relator has attempted to indiscriminately treat even the most minor of discovery matters as "egregious failures," a tactic the Special Master noted in correctly concluding that the issues raised by Relator

do not individually *or collectively* rise to that level or warrant the relief Relator seeks. (*Id.* at 7). Accordingly, Defendants respectfully request that this Court so-order the Recommendation.

## RELEVANT FACTS

As the Court is aware, discovery opened in this matter in April 2023. Since that time, Defendants have worked hard to respond to Relator's expansive and expanding discovery requests. In September 2023, the Special Master issued a recommended discovery schedule that set the substantial completion of production of documents deadline for Defendants' production to be December 1, 2023. That date was set based on a then-effective February 2024 deadline for the close of fact discovery. (Dkt. 69). Defendants worked in an expedited fashion to attempt to comply with the deadline set by the Special Master and, in fact, produced approximately 50,000 documents[1] by the December 2023 deadline. Relator then obtained a six-month extension of fact discovery based upon, among other things, their need for additional time to review that material.[2]

While the December 1 deadline was an important one – and Defendants made significant efforts to comply with it – there should be no serious question that since the Court's December 12, 2023 order extending the discovery deadlines in the case by six months, (Dkt. 106), document production has continued and expanded as a result of the acts of *both* parties. While, as discussed herein, Defendants have continued to produce documents after December 1, including some

---

[1] While Relator frequently invokes page numbers in briefing before the special master, page numbers can be very misleading given that certain of the documents produced contain thousands of pages of data that are not intended to be reviewed page-by-page.

[2] Defendants opposed the request for a six-month adjournment at the time as premature, noting, among other things, that Relator had forced Defendants to expedite their review of documents so to meet the December 1 substantial completion deadline. As noted below, in light of some of the production issues that have arisen since, Defendants have *not* opposed the further 120-day adjournment of the discovery schedule that the parties jointly sought in May 2024. (Dkt. 115).

inadvertently omitted from the original productions, Relator has sought to substantially expanded the breadth of document discovery, serving 136 additional requests for production in April and May 2024 (or nearly *a year* after serving their initial set of document requests), and seeking documents from additional custodians. Those requests by Relator have significantly expanded document production; indeed, Relator's March 2024 request for additional custodians alone resulted in the need for Defendants to collect and review an additional 50,000 documents.

Since December, both parties have also identified some errors and gaps in Defendants' initial productions, and Defendants have worked expeditiously to correct them. That work has included a voluntary, comprehensive audit of Defendants' e-discovery vendor's prior collection, processing, review and production. Defendants have also agreed to a further 120-day extension of discovery deadline, meaning that fact discovery will now not close until December 23, 2024, and have offered to reschedule any depositions impacted by the additional document production.

### A. The Initial DDL 10

On March 22, 2024, Relator submitted a discovery dispute letter ("DDL 10"), attached hereto as Ex. A) to the Special Discovery Master, identifying three sets of discrete issues with Defendants document productions.[3] Notably, Relator did not meet and confer with Defendants

---

[3] The three issues initially raised were: (1) the completeness of Defendants' production of materials related to CMS audits and third-party "mock audits" of Defendants, (2) certain internal "Work Instructions" or "WIs" related to internal processes Relator contends are relevant to the case, and (3) certain "share file" materials referenced in documents that were produced. Relator also raised in passing a series of small issues, including (i) the production of approximately 10 irrelevant documents obtained from a third-party, Dominic Duke, which Defendants produced a week prior to his deposition; and (ii) files from an actuarial share directory which had been inadvertently omitted from Defendants initial collection and that might be relevant to Mr. Duke's deposition. Notably, despite providing Relator with notice of both of these issues nearly a week prior to Mr. Duke's deposition – and offering Relator the opportunity to reschedule that deposition at a later date – Relator declined that invitation and chose to proceed. Relator sought an order "compelling Defendants to provide a detailed accounting of all non-email data sources (including but not limited to share drive files) (1) that were searched, (2) that exist within CVS' files, (3) from which documents were produced, and (4) that were considered but Defendants determined not to search."

prior to filing the discovery dispute – as they were required to do under both the Special Master Protocol and E.D. Pa. Local Civ. R. 26.1(f) – and thus Defendants had no notice or opportunity to address and correct Relator's concerns prior to the filing. In responding to DDL 10 by letter dated March 27, 2024, Defendants provided answers to some of Relator's concerns, noting that some of the documents at issue had, in fact, been produced, while offering to track down and produce some of the assertedly missing documents. (Ex. B).

In an April 3, 2024 interim recommendation that both parties accepted (the "Interim Recommendation"), the Special Discovery Master directed Defendants to provide greater detail on their process for locating and producing relevant documents and to specifically further address why the categories of documents raised in DDL 10 were not previously produced. (Ex. C). The Interim Recommendation also required the parties to meet and confer after Defendants provided the required information should Relator continue to have concerns.

Defendants provided the required information on April 12, 2024, explaining how they determined which sources of electronically stored information ("ESI") to review. Defendants also explained why documents at issue in DDL 10 had been omitted from the production, including that some documents fell outside of the parties' agreed upon search parameters, while others had been inadvertently omitted from their review and production. (Ex. D). On April 1, 2024 Defendants produced approximately 259 documents to address the concerns raised in DDL 10.

**B.  The Renewed DDL 10**

Relator did not respond to Defendants' April 12 Letter, nor did Relator ever seek to meet and confer regarding the same. Instead, on April 29, 2024, Relator submitted a supplemental letter

---

(Ex. A at 4). Relator additionally requested an order compelling Defendants to produce the documents contained within the three categories of sources (i.e., audit materials, work instructions, and share file sources). (Ex. A at 4).

to the Special Master taking issue with the information provided by Defendants and contending that the appropriate remedy was to order Defendants to re-run Defendants' entire document collection and review process at Defendants' expense, using a newly selected third-party vendor or impose other sanctions. (Ex. E). Once again, Relator failed to meet and confer about any of the issues raised in their April 29 letter, completely ignoring not only the Special Master Protocol and local rules, but the Special Master's direct order in his April 3 Interim Recommendation.

Defendants responded on May 2, 2024, noting that failure, and acknowledging that while both Relator and Defendants had identified certain errors in Defendants' production, most of the issues raised by Relator were modest and had already been addressed. (Ex. F). Defendants also responded to several new issues raised in Relator's supplemental letter, including concerns about Defendants request to clawback approximately 13 privileged documents inadvertently produced as expressly provided for under the terms of the Court-entered protective order, and Defendants production on April 1, 2024 of materials it received under a Freedom of Information Act ("FOIA") request to CMS, materials which (i) were produced not in response to a request from Relator but instead as relevant to Defendants' defenses, and (ii) which were in the large part only received by Defendants in March 2024. (Ex. F). As Defendants explained none of these issues were substantial and some – like Defendants' entirely appropriate request to claw back documents or production of then-recently received FOIA materials – were not "issues" at all but entirely appropriate developments in the parties' discovery efforts.

On May 7, 2024 – while the above dispute was pending – Defendants sent Relator a letter informing them that, as a result of a comprehensive audit Defendants had voluntarily undertaken of the work done by their e-discovery vendor, Consilio, Defendants learned of a wider range of documents that should have been reviewed for relevance by Consilio but had not been. Defendants

5

noted that the issues identified appeared to be the result of human errors in implementing agreed-upon search terms and review, and that the errors appeared to be inadvertent. Notably, as Defendants explained, the errors resulted in Consilio's review being both *over*- and under-inclusive: that is, in addition to failing to review certain documents that should have been included, Consilio had reviewed and produced documents that fell outside the scope of agreed-upon discovery parameters. Defendants also indicated that they intended to work to remedy the problem in a matter of weeks.[4] (Ex. G).

Both in the May 7 letter and since, Defendants have repeatedly offered to work with Relator to mitigate any potential prejudice to them because of these issues, including by agreeing to reschedule any upcoming depositions of impacted witnesses to ensure Relator had sufficient time to review any newly produced documents. As discussed above, Defendants have also consented to a 120-day extension of the discovery schedule to similarly ensure Relator has sufficient time to review any additional documents produced. This Court entered a Stipulation and Order adopting that revised schedule on May 28, 2024. (Dkt. 115).

On May 9, 2024 the Special Master held a conference at which all of the issues above were discussed. The Special Master noted that there had been no allegation or evidence of intentional misconduct, nor had Relator identified with any specificity any prejudice incurred, particularly in

---

[4] As noted in the May 7 letter, Defendants identified approximately 47,000 documents that had been identified, as of that date, for review. By email dated May 23, 2024, Defendants informed Relator that as a result of completing their audit of the work of the e-discovery vendor, the total volume of documents to be reviewed had grown to approximately 125,000. For point of comparison, Defendants' initial review had encompassed slightly more than 1 million documents, so the additional review reflects less than 10 percent of the total volume. That supplemental review is ongoing, but Defendants do not expect the production of material to be anywhere near that voluminous; as Relator is well aware, the responsiveness rate for documents reviewed throughout the case has been approximately 5 percent, a rate driven by a number of factors, including Relator's demand for expansive time periods and search terms not well tailored to the facts of the case.

light of the fact that discovery remained open. On May 16, 2024, the Special Discovery Master issued an informal written recommendation to resolve this dispute (the "May 16 Recommendation") which Defendants have indicated their willingness to accept. (Ex. H). On May 21, 2024, Relator informed the Special Discovery Master that it did not accept the May 16 Recommendation, at which time the Special Master formalized and issued on May 23, 2024 *Special Discovery Master's Report and Recommendation Regarding Defendants' Alleged Document Production Deficiencies* (Dkt. 112) (the "Recommendation").

In the Recommendation, the Special Master made several key findings. *First*, the Recommendation recognized that "[t]he collection, review, and production of documents in complex litigation such as this seldom is carried out without a hitch." (Dkt. 112 at 7) (internal citations omitted). *Second*, the Special Master noted that where, as here, discovery remains open the potential for any prejudice is dramatically reduced because the "[c]orrection of [production] errors during the discovery process mitigates (though does not necessarily eliminate) the potentially prejudicial effect of such errors." (Dkt. 112 at 7, citing *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212 (3d Cir. 2007)). On that front, while noting that the issues in dispute had caused "*some* prejudice" to Relator, the Special Master rejected Relator's efforts to characterize every issue of which they complained as an "egregious failure" finding that the issues and errors raised by Relator, even taken as a whole, "do not demonstrate a large-scale failure severely prejudicing Relator and warranting the drastic relief Relator seeks." (*Id.* at 7.)

*Third*, and perhaps most relevant, the Special Master specifically rejected that "drastic relief," noting the lack of any evidence of intentional misconduct and concluding that "Relator has not demonstrated that there are systemic flaws in defendants' document production" and that "even taken as a whole, the mistakes do not demonstrate that defendants' entire document production

7

process is flawed and must be redone from scratch." (Dkt. 112 at 8). The Special Master did, however, recommended that Defendants provide declarations with additional detailed information on the manner in which documents were collected and reviewed along with the results of its audit of the work of its e-discovery vendor. (*Id.* at 11-12).

**ARGUMENT**

Even though Defendants do not fully agree with all of the Recommendation's findings, Defendants nonetheless agree it is a fair resolution of the parties' disputes. Most important, the Recommendation is focused on moving this six-year-old case *forward*. Relator's demand for a complete re-do of Defendants' document collection, review, and production efforts is not only legally baseless but would needlessly and substantially delay the progress of the case. It also is not guaranteed to materially change the quantum of discovery produced. The Special Master thus did not err in rejecting that demand, and this Court should affirm his recommendation.

*First*, the Special Master correctly found that Relator had not demonstrated a "large-scale failure" or "systemic flaws in defendants' document production process as a whole." (Dkt. 112 at 9-10). That finding is correct and abundantly supported by the record which demonstrates the enormous efforts Defendants have undertaken with respect to discovery in this case, including collecting and reviewing more than 1 million documents from more than three dozen custodians. As this Court has correctly observed, this is a big case, and while it is relatively easy for Relator to castigate Defendants for even the most minor of discovery matters given that Relator has very few discovery obligations of its own, as the Special Master correctly concluded, the facts do not support those characterizations.[5]

---

[5] To illustrate the point, at present Relator has sought permission to take at least 32 depositions of Defendants and their employees, while Defendants have noticed 2 depositions; Relator has served a total of 464 document requests on Defendants, while Defendants have served 29; Relator has served 108 interrogatories on Defendants, while Defendants have served 2; and of greatest

8

*Second*, the Special Master correctly concluded that any discovery issues or errors to date have caused little prejudice to Relator and certainly have not caused the sort of "sever[e] prejudice" Relator complains of. That finding is also correct and well supported in the Recommendation. Indeed, as case law cited by the Recommendation itself makes clear, "[p]roduction errors discovered at the pre-trial stage of litigation will result in little, if any, expense or prejudice to the opposing party and therefore are not likely to warrant the imposition of sanctions." *Tracinda*, 502 F.3d at 243; *see also Flaherty v. M.A. Bruder & Sons, Inc.*, 202 F.R.D. 137, 141-42 (E.D. Pa. 2001) (denying motion for sanctions where there was no evidence of bad faith and any prejudice caused by untimely disclosure was curable); *Vogt v. Wetzel*, 2022 WL 3348889, at *2 (W.D. Pa. Aug. 12, 2022) (same). Here, not only are the parties in the pre-trial stage but discovery remains open – and will remain open for another *seven months* – leaving Relator abundant time to review and work with any further document productions. Moreover, as noted throughout, Defendants' ongoing productions come at the same time Relator is itself demanding thousands of additional documents, underscoring the extent to which Relator clearly believes document production and review is ongoing.

*Third*, the Special Master correctly concluded, based on the above, that the "drastic relief" Relator sought – effectively a redo of all document discovery work to date – was not warranted. (Dkt. 112 at 5, 9); *see also Lawson v. Love's Travel Stops & Country Stores, Inc.*, 2019 WL 5622453, at *5 (M.D. Pa. Oct. 31, 2019) (denying request that court order party to engage new e-discovery vendor at its own expense "both sweeping and largely unprecedented"). That is particularly true given that Defendants have already taken numerous efforts to investigate and

---

relevance here, Defendants have produced nearly 65,000 total documents, while Relator has produced 882.

address issues with the production and to attempt to mitigate any potential prejudice to Relator as a result. *See Weinstein v. Katapult Grp., Inc.*, 2022 WL 4548798, at *2 (N.D. Cal. Sept. 29, 2022) (finding that "defendant is in the best position to determine the appropriate scope of the search to respond to the opposing side's discovery requests" and found that there was "no further action" for the court where the party was "taking steps to remedy previous shortcomings").

Indeed, it bears mention that while complaining repeatedly – and generally in abstract terms about "prejudice" – Relator has done very little to attempt to mitigate any potential prejudice; notably, it has repeatedly failed to meet and confer with Defendants on issues or concerns, which might well resolve them short of costly litigation; it has declined invitations to postpone or reschedule depositions so as to await the production of further documents it contends it needs; and it has continued to make new and expansive document requests years after commencing this action that only expand the universe of materials that Relator will receive and need to review.

*Finally*, the relief recommended by the Special Master is more narrowly focused on the actual issues and more likely to move the case forward. The Special Master has recommended that the Defendants provide more detailed information on the issues and errors raised in DDL 10 and above, and Defendants have agreed to do that. To the extent Defendants' compliance with that requirement results in additional questions or concerns, Relator will be free to raise those with Defendants and, in turn, the Special Master, at that time.

## CONCLUSION

The Court should adopt the Special Discovery Master's May 23, 2024 Recommendation.

| | |
|---|---|
| Dated: June 3, 2024 | /s/ Jennifer B. Routh |
| | Jennifer B. Routh (*pro hac vice*) |
| | Theodore E. Alexander (*pro hac vice*) |
| | Crystal Fomba (*pro hac vice*) |
| | MCDERMOTT WILL & EMERY LLP |
| | 500 North Capitol Street NW |
| | Washington, DC 20001 |
| | (202) 756-8000 |
| | |
| | Edward B. Diskant (*pro hac vice*) |
| | Jessica Greer Griffith (PA Bar No. 332932) |
| | MCDERMOTT WILL & EMERY LLP |
| | One Vanderbilt Avenue |
| | New York, New York 10017 |
| | (212) 547 5400 |
| | |
| | *Counsel for Defendants* |
| | *CVS Health Corporation; SilverScript Insurance Company; Caremark, L.L.C.; CVS Pharmacy, Inc.; and CVS Caremark Part D Services, L.L.C.* |

11

## CERTIFICATE OF SERVICE

I certify that on June 3, 2024, this document was filed electronically, that it is available for viewing and downloading from the ECF system, and that all counsel of record will be served by the ECF system.

/s/ *Jennifer B. Routh*